DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JOHN C. BOSTIC (CABN 264367)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    FAX: (408) 535-5066
    john.bostic@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 18-CR-00195 BLF |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | Date: June 2, 2020 |
| ANTHONY LOPEZ, | Time: 9:00 a.m. |
| Defendant. | Court: Hon. Beth Labson Freeman |

## I. INTRODUCTION & BACKGROUND

The government hereby submits its sentencing memorandum in the above-captioned case. For the reasons discussed below, the government recommends that the Court impose a low-end Guidelines sentence of 110 months of imprisonment, to be followed by five years of supervised release.

This case arises from an undercover investigation carried out by the Bureau of Alcohol, Tobacco, Firearms, and Explosives focusing on illegal distribution of contraband, including narcotics, in San Jose. Defendant originally came into contact with federal law enforcement through Daniel Nogueira—an individual who approached a CI and offered to sell him contraband. After being introduced to the CI by Nogueira, Defendant arranged or facilitated two controlled buys during which an associate of his sold an

undercover federal agent approximately 81.8 grams of actual methamphetamine. The specific offense conduct is summarized below.

*January 19, 2017 Sale of Methamphetamine Arranged by Defendant*

Leading up to a transaction on January 19, 2017, Nogueira introduced the ATF CI to an individual with the nickname "Evil"—later identified as Defendant Anthony Lopez. Defendant and the CI exchanged mobile telephone numbers. On January 17, 2017, after Nogueira was arrested on unrelated state charges, the CI met Defendant at a prearranged location in downtown San Jose to arrange a future purchase of narcotics. The following day, the CI called Defendant to ask the price of one ounce of methamphetamine, and Defendant agreed to get back to him with the information. Defendant subsequently put the CI in contact with Defendant's associate, Shawn Moore—the supplier of the methamphetamine for the anticipated transaction.

On January 19, 2017, the CI sent a text message to Defendant and offered to pay him $50 for arranging the purchase of methamphetamine from Moore. Lopez accepted the offer. Shortly thereafter, the CI called Defendant and told him that he could tell Moore that the CI would be ready for the methamphetamine purchase in about an hour. The CI and Moore then corresponded to finalize timing for the deal. During one such call, Moore asked the CI whether Lopez or anyone else was with him.

That same afternoon, the CI and the undercover agent met with Moore at the agreed location, at which time Moore sold the undercover agent approximately 27.7 grams of methamphetamine with a purity of approximately 99%, for a total drug weight of 27.4 grams.

*January 23, 2017 Sale of Methamphetamine Facilitated by Defendant*

On January 22, the CI called Moore and made arrangements to purchase two ounces of methamphetamine the following day. On January 23, the day of the transaction, Moore confirmed that he would be ready to sell the methamphetamine later that afternoon. Moore had said that he had felt "sketchy" at the last sale due the fact that Defendant Lopez had not been there in person and the CI had brought an unknown person (the undercover agent). Accordingly, the CI met up with Defendant prior to the January 23 transaction so that he could be present during the sale. Defendant was also there to receive his agreed-upon payment for his role in facilitating both this sale and the previous sale on

January 19.  After the CI texted Moore that he and Lopez were on their way, Moore wrote back and provided some more instructions on where to go.

Once the group had assembled for the transaction, Defendant explained to Moore that he had met the CI through an acquaintance.  Moore then sold approximately 55.0 grams of methamphetamine with a purity of approximately 99%, for a total drug weight of 54.4 grams.  After Moore left the location, the agent gave Lopez $100 for arranging the two methamphetamine transactions on January 19 and January 23.

*Indictment and Case Status*

Defendant was indicted along with his associate Shawn Moore as codefendant.  (ECF No. 1).  The Indictment charged Defendant with one count of conspiracy to distribute five grams or more of methamphetamine (Count 1), and two counts of aiding and abetting distribution of five grams or more of methamphetamine (Counts 2 and 3).  On February 18, 2020, Defendant pleaded guilty to Counts one, two, and three in the Indictment without a plea agreement.  (ECF No. 42).

Several other associates of Noguiera and Lopez have been indicted in other cases for a variety of narcotics- and firearms-related criminal conduct.

## II.   SENTENCING GUIDELINES CALCULATIONS

Pursuant to the United States Sentencing Guidelines, which are advisory after the Supreme Court's decision in *United States v. Booker*, 125 S. Ct.738 (2005), Defendant has a Total Offense Level of 25, based on the following calculations.  Defendant's Base Offense Level is 30 under U.S.S.G. § 2D1.1(a)(5) and (c)(5) based on his role in aiding and abetting the distribution of approximately 82 grams of actual methamphetamine.  The government agrees with Probation that a two-point reduction under U.S.S.G. § 3B1.2(b) is appropriate in light of Defendant's role.  The government recommends a two-point reduction in light of Defendant's acceptance of responsibility as demonstrated by his guilty plea.  *See* U.S.S.G. § 3E1.1(a).  Additionally, Defendant has assisted the government by providing timely notice of his intention to plead guilty and permitting the government to avoid preparing for jury trial.  Accordingly, the government moves for an additional one-point decrease under U.S.S.G. § 3E1.1(b).  Accordingly, Defendant's final Total Offense Level is 25 as stated in the Presentence

Report.

The government agrees with the Probation Office that Defendant has 17 criminal history points, resulting in a Criminal History Category of VI. Defendant's Total Offense Level and Criminal History Category combine to yield a Guidelines sentencing range of 110 to 137 months.

### III.   UNITED STATES' SENTENCING RECOMMENDATION

The government believes that a sentence at the low end of the guidelines is appropriate given the facts of this case and the established sentencing factors. The relevant considerations include the nature and circumstances of the offense, the defendant's history and characteristics, and the need for the sentence: (1) to promote respect for the law and provide just punishment for the offense, (2) to afford adequate deterrence, (3) to protect the public from further criminal conduct by Defendant, and (4) to avoid unwarranted sentencing disparities among defendants with similar records who are guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(2).

In this case, a guidelines sentence is appropriate, with a low-end sentence of 110 months being sufficient, but no greater than necessary, to accomplish the above goals. The facts of this case are relatively simple and straightforward, and the government does not believe there are any factors in either the charged conduct or Defendant's background that are sufficiently unique or uncommon to remove this case from the heartland of similar narcotics trafficking offenses contemplated by the guidelines.

The government anticipates that Defendant's main argument at sentencing will focus on his reduced role relative to his codefendant, Shawn Moore. The government acknowledges that Defendant did not personally handle methamphetamine in connection with the charged transactions, and that Moore appears to have been the supplier for the narcotics that were sold. Defendant does not contest, however, that he is guilty as to counts in the Indictment charging him with aiding and abetting the distribution of methamphetamine, and it is bedrock law that an individual who "aids, abets, counsels, commands, induces or procures" the commission of a federal offense is "punishable as a principal." 18 U.S.C. § 2. The Guidelines account for Defendant's relatively minor role by according a two-point reduction in offense level, but a greater departure or variance is not warranted. The Guidelines contemplate larger discounts for defendants whose roles are truly "minimal." U.S.S.G. § 3B1.2(a). That provision,

however, is intended to apply in cases where appropriate in light of a defendant's "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." *Id.* Application Note 4.  Here, Defendant had a full understanding of the scope of the criminal conduct taking place.  Not only did he initiate the contact between the CI and Moore for the sole purpose of enabling the narcotics transactions, he was personally present at the second transaction in order to make sure it proceeded smoothly and to receive his agreed-upon compensation.  Although not determinative under section 3B1.2(a), it is clear from the record that Defendant was an essential part of the charged offenses, and that this criminal conduct could not have occurred without him.

Defendant's criminal history suggests that the charged offenses are not merely the product of Defendant's mere association with narcotics traffickers.  Defendant's convictions stretch back to well before his eighteenth birthday and include early incidents involving vehicle theft and burglary.  As an adult, Defendant incurred multiple convictions for controlled substance offenses, as well as other crimes involving violence, such as strong-arm robbery, fighting or challenging to fight in a public place, and possessing brass knuckles.  Defendant's substantial Guidelines range is a regrettable but inevitable result of his choices over the last ten years, culminating in his choice to engage in the charged conduct.  A Guidelines sentence will reflect the severity of that conduct and serve the important objectives of specific and general deterrence.

### IV.     CONCLUSION

For the foregoing reasons, the United States respectfully recommends that this Court sentence Defendant to 110 months of imprisonment—to be followed by a five-year term of supervised release—and order Defendant to pay a $300 special assessment.

DATED:  May 26, 2020                                  Respectfully Submitted,

DAVID L. ANDERSON
United States Attorney

 */s/*
JOHN C. BOSTIC
Assistant United States Attorney